## Knox's Estate (No. 2).

Argued October 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George B. Berger,* for appellants.

*Lee C. Beatty,* with him *Richard W. Ahlers,* for trustee, appellee.

*William A. Wilson,* with him *Eugene R. Speer* and *James M. Houston,* for executrix, appellee.

*Charles Denby, Jr.,* with him *David A. Reed,* of *Reed, Smith, Shaw & McClay,* for intervenor.

OPINION BY MR. JUSTICE LINN, November 12, 1937:

Philander C. Knox died in 1921 leaving a will made in 1920. After a number of legacies, he gave the residue to trustees "to hold the same for and during the lifetime of my wife, Lillie S. Knox and my children, and the lifetime of any grandchild or grandchildren who may be living at the time of my death, and for twenty-one years after the death of the longest surviving grandchild living at my decease, for the following uses and purposes": to pay one-fifth of the net income (after certain annuities) to each of the following for life: his widow, his daughter Rebekah, his sons Reed, Hugh and Philander. The trustees were directed, on the death of his widow, to "divide the portion of said income theretofore paid to her into four equal parts, and thereafter pay an equal one-fourth part of the same to each of my four children," naming them, for life. He provided that on the death of his daughter or of his sons Reed or Philander, "leav-

ing issue them surviving, I direct that my trustees shall pay in the same manner to such issue until the termination of the trust . . . *per stirpes* . . ." but if the daughter or Reed or Philander died without surviving issue, "their share of said income shall go to the other said surviving child or children named in this clause, the issue of any child deceased taking by representation." Upon the termination of the trust he directed that the trustees pay and transfer the estate to the living issue of his daughter and his sons Reed and Philander, per stirpes, and in default of issue to his heirs at law.

He gave to his granddaughter Kathleen Knox, daughter of his son Hugh, the sum of $50,000 "when and at the time she shall have reached the age of twenty-five years" and directed the trustees then to pay it to her.

Testator was survived by his widow and the four children named. His widow died in 1930 and his son Hugh in 1936. After the widow's death the income was divided equally among the four children until Hugh's death. Hugh left a will giving his estate to his widow and appointing her executrix.

The appeal comes from the audit of the third and partial account of the trustees, and the question for decision is who, since Hugh's death, is entitled to the share of the income theretofore received by him. While testator specifically designated what should become of the shares of income given to his wife, daughter, and sons Reed and Philander, he did not provide to whom, after Hugh's death, the trustees should pay the share of the income theretofore payable to him. The learned court below held testator died intestate of that part of the income and ordered distribution according to the intestate law, i. e., one-third to the executrix of Lillie S. Knox, testator's widow, one-sixth to the executrix of Hugh Knox, testator's son, and one-sixth each to Rebekah, Reed and Philander.

The sons appeal and contend that the income accruing after Hugh's death is part of the residuary estate and

passes to the three surviving children under the will. On behalf of Kathleen Knox, Hugh's daughter, the contention is "that there was no intestacy in the strict sense"; that having given his property to his trustees "to hold" for the purposes of the trust, "no property of any kind remained in the testator"; that the only interest remaining in him was a possibility of reverter; that on Hugh's death, a resulting trust arose in favor of the persons who at that time were the testator's heirs, and that she, therefore, was entitled to share with testator's three surviving children.

All parties, therefore, agree that the will named no distributee to receive the ¼ share of the income accruing from the time of Hugh's death until the trust ends. At death, property passes under the Intestate Acts unless a testator provides otherwise by will proved and construed as the law requires. It is well settled that "the heir or statutory distributee will not be disinherited except by express words or necessary intendment": *DeSilver's Estate*, 142 Pa. 74, 76, 21 A. 882. The will is to be read as though testator had written in it that on Hugh's death the trustees should pay the income to the distributees designated by the intestate law. The question presented was so thoroughly considered in the cases in which DeSilver's will was before this court that nothing can be added to the opinion of Judge PENROSE, which was adopted when the case came up the third time: *DeSilver's Estate*, 142 Pa. 74, 21 A. 882; *Getz's Appeal, DeSilver's Estate*, 125 Pa. 611, 17 A. 480; *Aubert's Appeal, DeSilver's Estate*, 119 Pa. 48, 12 A. 810; see also *Grothe's Estate*, 229 Pa. 186, 78 A. 88; *Milliken's Estate*, 227 Pa. 597, 76 A. 749.

The intestate law applied from the moment of testator's death as to all property not disposed of by the will: *DeSilver's Estate* (supra); *Schuldt v. Reading Trust Co.*, 292 Pa. 327, 332, 141 A. 152; *Gorgas's Estate*, 248 Pa. 343, 93 A. 1073; *Moore v. Deyo*, 212 Pa. 102, 61 A. 884; *Bell's Estate*, 147 Pa. 389, 392, 23 A. 577.

The trustees held the property on the trusts expressly declared for the distributees named by the testator, and for those designated by the intestate law; the purpose for which the trust was created has not failed.

Section 15(c) of the Wills Act, 1917, P. L. 403, 20 PS section 253, does not apply. It is as follows: "Unless a contrary intention shall appear by the will, such real or personal estate, or interests therein, as shall be comprised or intended to be comprised in any devise or bequest in such will contained, which shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law, or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest, if any, contained in such will. In any case where such devise or bequest which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue."

The contention is that the bequest of the fourth part of the income in question in this case is within the class described as "otherwise incapable of taking effect." As has been shown above, this bequest does take effect; it passes to distributees designated by the intestate law, and therefore does not go to the three surviving children alone; it is not a lapsed legacy. An example of a legacy "incapable of taking effect" came up in *Thompson's Estate*, 304 Pa. 349, 155 A. 925, where the failure resulted from the refusal to form a partnership which, if formed, could have taken the bequest: see also *Moore's Estate*, 101 Pa. Super. Ct. 39; *Desh's Estate*, 321 Pa. 286, 184 A. 111.

Decree affirmed, costs to be paid by appellants.